IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LUCAS ENTERTAINMENT, INC, A NEW YORK CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DOES 1 - 185, )<br>)<br>Defendants. )<br>)<br>) | CAUSE NO. 3:10-CV-01537-B |

## MOTION TO RECONSIDER AND BRIEF IN SUPPORT THEREOF

The entity accused by non-party Comcast Cable of being Doe 64 in the above-captioned litigation (hereinafter "Accused Doe 64"), by counsel, files this Motion to Reconsider the Court's denial (Dkt. # 17) of its Motion to Quash Subpoena (Dkt. # 14), and states:

Accused Doe 64 filed its Motion to Quash Subpoena on October 7, 2010.  Plaintiff filed a response this morning, October 8, 2010.  Also today, the Court denied the Motion to Quash.  Accused Doe 64 is promptly filing this motion to reconsider[1] because, as explained in greater detail below, it has become aware that Plaintiff's subpoena to Comcast Cable is facially invalid and cannot be enforced.

In its response to the Motion to Quash, Plaintiff complains that Accused Doe 64 failed to comply with Rule 45.  During the course of preparing a response to Plaintiff's argument, it

---

[1] This motion to reconsider technically could be construed as a motion to quash since it is being timely filed within the time for compliance set forth in the Comcast subpoena.  *See, e.g., Flagstar Bank, FSB v. Freestar Bank, N.A.*, No. 09 C 1941, 2009 U.S. Dist. LEXIS 76842, *9-*10 (N.D. Ill. Aug. 25, 2009) ("As . . . motion to quash was filed on the date of compliance and not after said date, it was clearly filed in a timely manner") (copy of opinion attached hereto as Exhibit A).

became apparent that it is Plaintiff who has not complied with Rule 45.  The Fifth Circuit has stated, "a federal court sitting in one district **_cannot_** issue a subpoena *duces tecum* to a non-party for the production of documents located in another district." *Natural Gas Pipeline Co. v. Energy Gathering*, 2 F.3d 1397, 1406 (5th Cir. 1993) (emphasis added).  Yet, that is precisely what Plaintiff is attempting to do.  Plaintiff has issued a subpoena out of the U.S. District Court fort the Northern District of Texas to a non-party, Comcast Cable, at a Pennsylvania address, which purports to require production of documents in the Eastern District of Texas (i.e., Denton, Texas).  ***Such a subpoena cannot be enforced***.  *See id.  See also Jenkins v. Arcadia Fin. Ltd.*, No. 3:99-MC-012-D, 1999 U.S. Dist. LEXIS 2351, *2-*3 (N.D. Tex. Feb. 24, 1999) (Sanderson, M.J.) (copy of opinion attached hereto as Exhibit B).  Therefore, Plaintiff's subpoena to Comcast Cable (Pl.'s App. at 5, Dkt. # 14-1 at 8) should be quashed in its entirety.

   WHEREFORE, Accused Doe 64 asks the Court to quash the subpoena served on Comcast Cable, and for all other just and proper relief.

    Respectfully submitted,

By: /s/ Casey L. Griffith
Casey L. Griffith
Texas Bar No. 24036687
Darin M. Klemchuk
Texas Bar No. 24002418
KLEMCHUK KUBASTA LLP
8150 North Central Expwy., Ste. 1150
Dallas, Texas 75206
Telephone: (214) 367-6000
Facsimile: (214) 764-6673
casey.griffith@kk-llp.com
darin.klemchuk@kk-llp.com
docket@kk-llp.com

**OF COUNSEL:**
Peter M. Cummins
FROST BROWN TODD LLC
400 West Market St., 32nd Floor
Louisville, KY 40202-3363
Telephone: (502) 589-5400
Facsimile: (502) 581-1087
pcummins@fbtlaw.com

**COUNSEL FOR ACCUSED DOE 64**

## CERTIFICATE OF SERVICE

    On the 8th day of October 2010, I electronically filed the foregoing document with the U.S. District Clerk for Northern District of Texas, using the electronic case filing (ECF) system of the court. The ECF system will send a "Notice of Electronic Filing" to all counsel of record who have consented in writing to accept the Notice as service of this document by electronic means:

/s/ Casey L. Griffith
Casey L. Griffith

# Exhibit A



FOCUS - 2 of 4 DOCUMENTS

**FLAGSTAR BANK, FSB, Plaintiff, v. FREESTAR BANK, N.A., Defendant.**

**Case No. 09 C 1941**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2009 U.S. Dist. LEXIS 76842*

**August 25, 2009, Decided
August 25, 2009, Filed**

**COUNSEL:** [*1] For Flagstar Bank, FSB, Plaintiff: Chanille Carswell, Brooks Kushman P.C., Southfield, MI; Kurt Brendan Drain, Panos T. Topalis, Tribler Orpett and Meyer, P.C., Chicago, IL; Robert Tuttle, Brooks Kushman, Southfield, MI.

For Freestar Bank, N.A., Defendant: Robert Augustine Kearney, LEAD ATTORNEY, Law Office of Robert A. Dearney, Bloomington, IL; Thomas James Piskorski, Seyfarth Shaw LLP, Chicago, IL.

**JUDGES:** ARLANDER KEYS, UNITED STATES DISTRICT COURT MAGISTRATE JUDGE. Judge Virginia M. Kendall.

**OPINION BY:** ARLANDER KEYS

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Flagstar Bank, FSB (Flagstar) filed suit against Defendant Freestar Bank, N.A. (Freestar) alleging, *inter alia*, trademark infringement. During the discovery period, Plaintiff served a third-party law firm with a subpoena requesting the production of documents. Because the firm had been retained by Defendant prior to receiving the subpoena, it refused to produce the documents, citing both the attorney-client privilege and work product doctrine. Before the Court is Defendant's Motion to Quash Subpoena *Duces Tecum* in a Civil Case. For the reasons set forth below, Defendant's motion to quash is granted in part and denied in part.

**Factual Background**

Initially, [*2] Defendant conducted business under two names -- Pontiac National Bank and People's Bank. Seeking a common identity, it hired the marketing firm of Tracey Edwards Company, Inc. (TEC) to suggest a new name; Defendant retained the law firm of Barack Ferrazzano Kirschbaum & Nagelberg LLP (Barack Ferrazzano) to provide legal counsel in connection with the renaming process. Subsequently, TEC suggested the name Freestar and Defendant adopted it as its own. After the new name and service mark were chosen, Barack Ferrazzano began representing Defendant in the registration process with the United States Patent and Trademark Office (PTO).

In June 2007, Plaintiff filed with the PTO an opposition to Defendant's registration of the Freestar mark. Believing that Defendant's name is "confusingly similar" to its own trademark, Plaintiff subsequently suspended its opposition and filed a three-count complaint in the United States District Court for the Central District of Illinois, where the case is currently pending. [1] During the discovery period, Plaintiff served subpoenas on both TEC [2] and Barack Ferrazzano. [3] The

Case 3:10-cv-01537-B-BD   Document 18   Filed 10/08/10   Page 6 of 14   PageID 94

Page 2
2009 U.S. Dist. LEXIS 76842, *2

subpoenas were identical with respect to the information sought. Specifically, Plaintiff [*3] requested

> [a]ll documents and things including, but not limited to, correspondence, memoranda, surveys, tests, studies and reports, which evidence, refer or relate to the creation and/or selection of the name Freestar Bank and the mark Freestar Bank "Life Keeps Getting Better," as well as any names or marks which were considered and rejected by the Tracey Edwards Company, Inc. and/or Freestar Bank.

In response, TEC produced some documents but withheld four others, on the ground that they were immune from discovery under the attorney-client privilege. Similarly, Barack Ferrazzano produced three documents but failed to produce any others, as it contended that the remaining relevant documents were protected by the attorney-client privilege and/or the work product doctrine. It opted instead to provide a privilege log that detailed the fifty-nine documents that it withheld.

> 1  Plaintiff initially filed suit in the United States District Court for the Eastern District of Michigan. However, the case was dismissed as the court lacked jurisdiction over Defendant.
> 2  As TEC is located in Manchester, New Hampshire, its subpoena was issued in the name of the United States District Court for the District [*4] of New Hampshire.
> 3  Initially, the Barack Ferrazzano subpoena was issued in the name of the United States District Court for the Central District of Illinois. However, the court, on Defendant's motion to quash a subpoena *duces tecum,* opined that the subpoena was invalid on its face. Specifically, the court held that "[a] subpoena for production or inspection of documents . . . must issue 'from the court for the district where the production or inspection is to be made.'" Because the production of documents was to take place in the Northern District of Illinois, namely, Chicago, the court granted Defendant's motion to quash solely on that limited basis, but stated, "If the subpoena is properly re-issued, Defendant may re-raise those arguments not addressed by this Order." Subsequently, Plaintiff reissued the subpoena in the name of the United States District Court for the Northern District of Illinois.

Defendant filed a motion to quash the TEC subpoena in the United States District Court for the District of New Hampshire. On May 13, 2009, after an in camera examination of the documents withheld by TEC, Magistrate Judge James R. Muirhead denied Defendant's motion and ordered it to produce [*5] the four documents. After filing a motion for reconsideration that was subsequently denied on June 17, 2009, Defendant, on July 1, 2009, filed an objection to the magistrate judge's order, which is currently pending before the New Hampshire court. 4

> 4  The parties briefed the issue as to whether Defendant's "claim of attorney-client privilege with respect to the April 13, 2006 letter is moot in light of the New Hampshire court's ruling" that the letter is not privileged and must be produced. The Seventh Circuit has held that,
>
> > No mechanical rule governs the handling of overlapping cases. Judges sometimes stay proceedings in the more recently filed case to allow the first to proceed; sometimes a stay permits the more comprehensive of the actions to go forward. But the judge hearing the second-filed case may conclude that it is a superior vehicle and may press forward. When the cases proceed in parallel, the first to reach judgment controls the other, through claim preclusion (res judicata).
>
> *Central States, Southeast & Southwest Areas Pension Fund v. Paramount Liquor Co., 203 F.3d 442, 444-45 (7th Cir. 2000).* Because the subpoena at issue was served on the law firm that Defendant retained [*6] to provide legal counsel in its renaming process and because of the sheer number of documents at issue in the matter pending before this Court (fifty-nine, as opposed to four in the District Court of New Hampshire), the Court proceeds with its analysis of Defendant's motion. To the Court's knowledge, the New Hampshire court has not ruled on

Defendant's objection to Judge Muirhead's decision. Because there is no final decision in the matter before the New Hampshire court, the issue pending before this Court is not rendered moot.

Defendant has submitted to this Court, a privilege log of documents withheld by Barack Ferrazzano, affidavits, and copies of the documents which it believes are privileged, for an in camera review.

**Discussion**

*Federal Rule of Civil Procedure 26(b)(1)* allows "[p]arties [to] obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." In the case at bar, Defendant seeks to avoid disclosure of fifty-nine documents based upon the attorney-client privilege and/or the work product doctrine.

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981)* [*7] (citing 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961)). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id*. In determining whether the privilege applies to communications, the Seventh Circuit has adopted the following test:

> (1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. Evans, 113 F.3d 1457, 1461 (7th Cir. 1997)*; *United States v. White, 950 F.2d 426, 430 (7th Cir. 1991)*. "[B]ecause the privilege is in derogation of the search for the truth, it is construed narrowly." *Evans, 113 F.3d at 1461*. And "protects only those disclosures -- necessary to obtain informed legal advice -- which might not have been made absent the privilege." *Fisher v. United States, 425 U.S. 391, 403, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1976)*. Indeed, "only if [*8] [the communications] constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence," will the privilege attach. *United States v. Defazio, 899 F.2d 626, 635 (7th Cir. 1990)*.

"[T]he work-product doctrine is 'distinct from and broader than the attorney-client privilege.'" *In re Special September 1978 Grand Jury (II), 640 F.2d 49, 62 (7th Cir. 1980)* (quoting *United States v. Nobles, supra, 422 U.S. at 238 n. 11, 95 S. Ct. at 2170 (1974)*). It shields "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." *Fed. R. Civ. P. 26(b)(3)*. Specifically, the doctrine "protect[s] against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id*. Documents not containing such impressions, conclusions, opinions, or legal theories are discoverable only after "showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by [*9] other means." *Mattenson v. Baxter Healthcare Corp., 438 F.3d 763, 768-69 (7th Cir. 2006)* (citing *Hickman v. Taylor, 329 U.S. 495, 511-12, 67 S. Ct. 385, 91 L. Ed. 451 (1947)*; *In re Cendant Corp. Securities Litigation, 343 F.3d 658, 663 (3d Cir. 2003))*.

"A party that refuses to disclose information based on a claim of privilege bears the burden of establishing that the privilege applies." *McNally Tunneling Corp. v. City of Evanston, No. 00 C 6979, 2002 U.S. Dist. LEXIS 379, at *5 (N.D. Ill. Jan. 11, 2002)* (citing *In re Grand Jury Proceedings, 220 F.3d 568, 571 (7th Cir. 2000)* (attorney client privilege); *Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 138 (3d Cir. 2000)* (work product doctrine).

Plaintiff argues that: 1) Defendant's motion to quash is untimely, 2) the attorney-client privilege never attached to certain of the withheld documents, and 3) the privilege does not apply to at least one of the documents, as Defendant waived it.

**A. Timeliness of Motion**

Plaintiff contends that Defendant's motion to quash is untimely as it was not filed before the subpoena's stated compliance date.

A motion to quash a subpoena must be timely filed. *Fed. R. Civ. P. 45(c)(3)(A)*. Though [*10] the rule fails to define the term "timely," courts have held that "a motion to quash must be made at or before the time of compliance." *NLFC, Inc. v. Devcom Mid-America, No. 93 C 0609, 1994 U.S. Dist. LEXIS 6245, at *27 n.2 (N.D. Ill. May 11, 1994)*. In the case at bar, the date for compliance listed on the Barack Ferrazzano subpoena is March 30, 2009; though the subpoena allows a party to indicate a time for compliance in addition to the date, Plaintiff failed to do so. Defendant filed its motion to quash after 3:00 p.m. on the date of compliance. While this was seemingly a timely filing, Plaintiff argues that it was not. Indeed, it maintains that Defendant was served with notice of the subpoena seventeen days prior to the compliance date -- a subpoena, Plaintiff argues, identical to one that was incorrectly served on Defendant more than a month prior to Defendant's filing of its motion to quash. As such, Plaintiff asserts that Defendant's failure to file its motion to quash prior to the compliance date renders it untimely. The Court disagrees.

As Defendant's motion to quash was filed on the date of compliance and not after said date, it was clearly filed in a timely manner. The factors [*11] discussed by Plaintiff which allegedly merit requiring Defendant to file its motion before the date of compliance, are of no moment. To be sure, if the Court were to adopt Plaintiff's proffered reasoning, the responding party to a subpoena would be greatly prejudiced. Indeed, though one date would be listed on the subpoena, the compliance date could potentially be earlier than that listed, thereby rendering the listing of a date useless. This is not an outcome that the law favors, nor will this Court adopt.

The Court also notes that the rule prescribes no minimum or maximum compliance time -- its only requirement is that the time be "reasonable." The absence of a mandatory time implicitly advises that the time chosen is made on a case-by-base basis and based on the circumstances of each case. If Plaintiff had concerns, the time to address them (by adjusting the time for compliance) was before the date had been set and communicated to Defendant, not after. The Court will not now penalize Defendant, as it filed its motion on the date that it believed, indeed, that Plaintiff communicated, was the compliance date.

Additionally, Plaintiff's reliance on *Innomed Labs, LLC v. Alza Corp., 211 F.R.D. 237 (S.D.N.Y. 2002)*, [*12] is misplaced. Aside from not being binding on this Court, the facts of *Innomed* are inapposite to those of the case at bar. In *Innomed*, a party failed to file a motion to quash a subpoena noticing a deposition, prior to the noticed date of a scheduled deposition. *Innomed, 211 F.R.D. at 240*. Indeed, according to the court, the party "blatant[ly] disregard[ed] . . . the subpoena." *Id*. In this case, however, there was no deposition scheduled, only the production of documents. As such, the same concerns attendant to a deposition (e.g., cost, scheduling) are not present here, and therefore, the Court need not require Defendant to respond before the compliance date.

Consequently, the Court finds that Defendant's motion to quash was timely filed.

**B. Attachment of the Attorney-Client Privilege**

Plaintiff next argues that the attorney-client privilege has not attached to some of the withheld documents and are thus, discoverable. Specifically, it contends that information which demonstrates that a trademark search was executed and the trademark search report itself, are not protected by the privilege.

The Seventh Circuit has held that

> [a]lthough the attorney-client privilege generally attaches only [*13] to statements made by the client, statements made by the lawyer to the client will be protected in circumstances where those communications rest on confidential information obtained from the client, or where those communications would reveal the substance of a confidential communication by the client.

*Rehling v. City of Chicago, 207 F.3d 1009, 1019 (7th Cir. 2000)* (citations omitted). In retaining Barack Ferrazzano to provide legal counsel during the renaming process, it was necessary that Defendant provide the firm with confidential information, specifically, its potential new name. Defendant took measures to preserve the classified nature of the information and thus, ensure that its employees were not made aware of the new name until the designated time. Indeed, in an email to its employees, Scott Dixon (Dixon), Defendant's Executive Vice President, spoke of the "secrecy and privacy" that surrounded the new name, and the anticipation leading to the announcement date. Malcolm McCaleb, Jr.

(McCaleb), an attorney at Barack Ferrazzano, used this confidential information to conduct trademark searches, generate search reports, and communicate his findings to Defendant. As this meets the [*14] standard articulated by the Seventh Circuit, the Court finds that the trademark searches at issue are protected by the privilege. Indeed, the rule provided by the Seventh Circuit does not allow for the consideration of the "source or nature" of the information. The sole inquiry here is whether the information was provided in confidence. The Court finds that it was.

In addition, the Court declines to adopt a bright-line rule that would render all documents that demonstrate the execution of a trademark search and all trademark search reports, non-privileged. To be sure, the Seventh Circuit has counselled against such practice in holding that, "the privilege must be made and sustained on a document-by-document basis." *United States v. White, 970 F.2d 328, 334 (7th Cir. 1992)*.

The Court, therefore, finds that documentation evidencing the performance of trademark searches and the resulting search reports themselves are, in *this* case, protected by the attorney-client privilege.

### C. Waiver of the Attorney-Client Privilege

Plaintiff asserts that Defendant waived the attorney-client privilege for a certain document when its client disclosed the communication to a third party. 5

> 5   Additionally, Plaintiff [*15] contends that the privilege was waived as to other documents listed on Defendant's privilege log because an individual listed on the log was not proven to be "an attorney or agent of Barack Ferrazzano." Defendant subsequently submitted the affidavit of the employee. She was indeed employed by Barack Ferrazzano, during the relevant time periods, as a legal secretary. Therefore, the privilege as to those documents, is not waived on this ground.

Generally, intentional disclosure of a privileged document to a third party waives the privilege. *Beneficial Franchise Co., Inc. v. Bank One, N.A., 205 F.R.D. 212, 215 (N.D. Ill. 2001)*. In limited circumstances, the disclosure of privileged communications to independent contractors and other third parties who are functional equivalents of employees, will not waive the attorney-client privilege. *In re Bieter Co., 16 F.3d 929, 937-38 (8th Cir. 1994)*. However, the privilege is waived when the documents are disclosed to an agent for a purpose unrelated to the rendition of legal advice or protection of a legal interest. *Allianz Underwriters, Inc. v. Rusty Jones, Inc., No. 84 C 10860, 1985 U.S. Dist. LEXIS 12204, at *6 (N.D. Ill. Dec. 30, 1985)* (citing [*16] Linklater, *Disclosure of Confidential Information Can Destroy the Attorney-Client* Privilege, 66 Chi. Bar Rec. 34, 37-38 (July-Aug. 1984); People *v. Knippenberg, 66 Ill. 2d 276, 362 N.E.2d 681, 6 Ill. Dec. 46, 49 (1977)*; *United States v. Brown, 478 F.2d 1038, 1040 (7th Cir. 1973))*. Further, the scope of the waiver extends to all communications relating to the same subject matter. *Wunderlich-Malec Sys. v. Eisenmann Corp., No. 05 C 4343, 2007 U.S. Dist. LEXIS 78620, at *18 (N.D. Ill. Oct. 18, 2007)* (citing *Chinnici v. Central DuPage Hosp. Ass'n, 136 F.R.D. 464, 465 (N.D. Ill. 1991))*.

At issue is a letter authored by Mr. McCaleb dated April 13, 2006. The letter was forwarded to Defendant's President, Ed Vogelsinger, who, in turn, sent it to Jason Knights (Knights), an employee of TEC who provided "a full range of branding and marketing services" to Defendant. Plaintiff argues that the disclosure of the letter to Mr. Knights, a third party, waived the attorney-client privilege. Defendant counters that the privilege was not waived, as Mr. Knights was meaningfully associated with Defendant and should, therefore, be treated as an insider of Defendant. The Court need not reach this issue, however, as it finds [*17] that Defendant failed to meet its burden of showing that the letter was disclosed to Mr. Knights for "the rendition of legal advice" or "the protection of a legal interest."

Indeed, Defendant argues that disclosure of the letter to Mr. Knights "made sense" based upon the subject line of the letter alone -- "Re: Proposed Bank Name and Service Mark FREESTAR." The Court disagrees. A contract entered into by TEC and Defendant provides that TEC would provide Defendant with a list of potential names for consideration. Additionally, TEC agreed to "[c]onduct a cursory Internet and trademark search of the names submitted to identify any obvious conflicts." Mr. Knights testified that, as early as March 28, 2006, Defendant had agreed to adopt the FREESTAR name that TEC had suggested. This was more than two weeks prior to the date of the letter at issue. And though Mr. Knights continued to work with Defendant after suggesting the new name, he stated that the subsequent work "involved

marketing and advertising" -- an assertion bolstered by at least one email sent to Mr. Knights by Mr. Dixon. This can hardly be considered legal in nature sufficient to prevent waiver of the privilege. Nor is it of [*18] consequence that Defendant's mark was not registered until later, as TEC expressly stated that it would "not be responsible for the final trademark search and registration."

Because the involvement of Mr. Knights as of the date of the letter at issue was not legal in nature, disclosing the April 13 letter to him effectuated a waiver of the attorney-client privilege as to that document and to any other documents of the same subject matter.

**D. Rulings on Specific Documents**

Though Plaintiff fails to raise objections to the vast majority of the fifty-nine documents, the Court addresses each document below.

   1. Documents 1, 4, 5 and 6: **PRIVILEGED**

Handwritten notes by Mr. McCaleb regarding trademark searches and analyses. Because the communications contain information received during confidential discussions with his client for the purpose of providing legal advice, they are protected by the attorney-client privilege, and thus, not discoverable.

   2. Documents 2 and 3: **PRIVILEGED**

Emails between Barack Ferrazzano attorneys for the purpose of providing legal advice to Defendant regarding its name change. These documents need not be produced.

   3. Document 7: **PRIVILEGE WAIVED**

Handwritten note by Mr. McCaleb [*19] regarding trademark search. As this document relates to the same subject matter as the April 13 letter, it is discoverable for the reasons discussed *supra,* and therefore, must be produced.

   4. Document 8: **PRIVILEGE WAIVED**

April 13, 2006 letter from Mr. McCaleb to Mr. Vogelsinger discussing a logo discovered during a trademark search. For the reasons discussed *supra,* the privilege has been waived and the letter must be produced.

   5. Documents 9, 11, 14, 24, 25, and 31: **PRIVILEGED**

Handwritten notes by Mr. McCaleb detailing his conversations with client regarding the name change, trademark applications, and/or registration. As these documents contain information received during confidential discussions with his client for the purpose of providing legal advice, they are protected by the attorney-client privilege, and thus, not discoverable.

   6. Documents 10, 12, 13, 15, 16, 17, 18, 19, 20, 21, 22, 23, 26, 27, 28, 29, 30, 32, 33, 34, 35, 41, 42, 43, 44, 51, 52, 53, 54, 55, 56, 58 and 59: **PRIVILEGED**

Emails between Mr. McCaleb, Mr. Vogelsinger, Mr. Dixon, and/or other Barack Ferrazzano attorneys and their assistants regarding Defendant's trademark application, registration, and/or its name change. [*20] Because the emails were generated for the purpose of providing legal advice to Defendant regarding its name change, they are not discoverable.

   7. Documents 36, 37, 38, 39, and 40: **PRIVILEGED**

Invoices from Barack Ferrazzano to Defendant. As they contain legal advice, they are protected by the attorney-client privilege. *See Christman v. Brauvin Realty Advisors, Inc., 185 F.R.D. 251, 255 (N.D. Ill. 1999)* (holding that bills containing confidential communications are privileged).

8. Documents 45, 46, 47, 48, 49, and 50: **PRIVILEGED**

Emails between Barack Ferrazzano employees regarding Plaintiff's potential litigation. These are protected by the work-product doctrine and need not be produced.

9. Document 57: **PRIVILEGED**

Email from Barack Ferrazzano attorney to client regarding a trademark search. Because the communication contains information received during a confidential discussion with the client for the purpose of providing legal advice, it is protected by the attorney-client privilege, and thus, not discoverable.

**Conclusion**

For the reasons set forth above, Defendant's Motion to Quash Subpoena *Duces Tecum* in a Civil Case is granted in part and denied in part.

Date: August 25, 2009

/s/ Arlander Keys

MAGISTRATE [*21] JUDGE ARLANDER KEYS

UNITED STATES DISTRICT COURT

# Exhibit B



LEXSEE 1999 U.S. DIST. LEXIS 2351

**SHONDA DENISE JENKINS, Plaintiff, v. ARCADIA FINANCIAL LTD., Defendant.**

3:99-MC-012-D

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

*1999 U.S. Dist. LEXIS 2351*

**February 24, 1999, Decided
February 25, 1999, Entered on Docket**

**DISPOSITION:** [*1] Plaintiff's Motion to Compel DENIED.

**COUNSEL:** For SHONDA DENISE JENKINS, plaintiff: David Humphreys, Humphreys Wallace Humphreys, Tulsa, OK USA.

**JUDGES:** William F. Sanderson, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** William F. Sanderson

**OPINION**

MEMORANDUM OPINION AND ORDER

Pursuant to the District Court's order of reference of February 22, 1999 and the provisions of *28 U.S.C. § 636(c)* came on to be considered Plaintiff's Motion to Compel of February 22, 1999, and the court finds and orders as follows:

Plaintiff's Motion to Compel relates to Jenkins v. Arcadia Financial Ltd., Case No. 98-CV-589 H(J), an action filed in the Northern District of Oklahoma and slated for jury trial on June 21, 1999, and seeks to compel the Custodian of Records of Experian Information Solutions, Inc. ("EIS"), a business entity located in Allen, Texas and nonparty in that case, to produce documents and to designate a corporate representative to appear and testify pursuant to subpoena served upon EIS on December 31, 1998. The City of Allen is located in Collin County which lies in the Sherman Division of the Eastern District of Texas. The subject subpoena served upon EIS was issued from the United States District [*2] Court for the Northern District of Texas. Plaintiff's Motion to Compel thus raises the following issue: whether this court has the power to enforce a subpoena and order production of records in custody and control of a nonparty (i.e., EIS) located in another judicial district.

Indeed, *Federal Rule of Civil Procedure 45(e)* enlarged a court's subpoena power to limit attendance or production to a place not more than 100 miles from the place where that person (or custodian) resides, is employed or regularly transacts business in person. Nevertheless, the Fifth Circuit has expressly held that "a federal court sitting in one district cannot issue a subpoena *duces tecum* to a non-party for the production of documents located in another district." [1] *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc., 2 F.3d 1397, 1406 (5th Cir. 1993)*; see also *Cates v. LTV Aerospace Corp., 480 F.2d 620, 624 (5th Cir. 1973)* ("a court cannot order production of records in the custody and control of a non-party located in a foreign judicial district"). The Court specifically declined "to add to [its

list of inherent powers] a broad, general power to order nonparties beyond the forum [*3] district to produce documents." *2 F.3d at 1408-09*. The only possible exception the Court appeared to recognize was that a "court might well have inherent power to order a *party* to produce pertinent documents." *Id. at 1409, n. 34* (emphasis in original).

> 1   In Natural Gas Pipline Co. v. Energy Gathering, Inc., suit was filed in the Southern District of Texas (Houston, Texas) and the nonparty's documents were located in Mississippi.

It is therefore ORDERED that Plaintiff's Motion to Compel is DENIED.

SIGNED this 24th day of February, 1999.

William F. Sanderson

UNITED STATES MAGISTRATE JUDGE